**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BRETT TONEY,

                              Plaintiff,

          - v -                                                    Civ. No. 9:04-CV-1174
                                                                              (TJM/RFT)

GLENN GOORD, Commissioner DOCS; WILLIAM LAPE,
Superintendent, Marcy Correctional Facility; MICHAEL
MCDONALD, Deputy Superintendent of Programs;
MS. S. MULVIHILL, Senior Correctional Counselor of Marcy
Correctional Facility; DAVID MOULTON, Correctional
Counselor of Marcy Correctional Facility; JOHN NUTTALL,
Deputy Commissioner of Programs; DR. HAIDER-SHAH,
Medical Doctor of Marcy Correctional Facility; and DR. THESEE,
Office of Mental Health,

                              Defendants.

**APPEARANCES:**                                        **OF COUNSEL:**

BRETT TONEY
Plaintiff, *Pro Se*
25 Merritt Street
West Islip, NY 11795

HON. ELIOT SPITZER                                      CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York              Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

   *Pro se* Plaintiff Brett Toney brings a civil action pursuant to 42 U.S.C. § 1983, alleging

violations of the Due Process and Equal Protection Clauses under the Fourteenth Amendment, and

the Eighth Amendment, and the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §

12101, *et seq.*   Dkt. No. 1, Compl. at ¶¶ 1 & 12.   Defendants Glenn Goord, Commissioner of the Department of Correctional Services ("DOCS"), William Lape, Superintendent at Marcy Correctional Facility ("Marcy"), Michael McDonald, Deputy Superintendent of Programs, Ms. S. Mulvihill, Senior Correctional Counselor at Marcy, David Moulton, Correctional Counselor at Marcy, John Nuttall, Deputy Commissioner of Programs, Dr. Haider-Shah, Medical Doctor at Marcy, and Dr. Thesee, at the Office of Mental Health ("OMH"), bring this Motion to Dismiss. Dkt. No. 22.   Plaintiff opposes the Motion.   Dkt. No. 24.   For the reasons to follow, it is recommended that the Motion to Dismiss be **granted**.

## I.   FACTS

The following facts are derived from the Complaint, which on a motion to dismiss, must be taken as true.   At the age of seventeen, Plaintiff became addicted to "intravenous heroin and cocaine[.]"   Compl. at ¶ 21, Ex. 2.   This addiction has limited Plaintiff's life activities including impairing his inability to maintain employment, interference with his education, and neglect to his health and safety which has resulted in depression and anxiety.   *Id.* at ¶ 22.

During Plaintiff's incarceration at the Mid-Orange Correctional Facility, Toney completed the Alcohol and Substance Abuse Treatment ("ASAT") program in September 2000.   *Id.* at ¶ 23, Ex. 4.   In December 2000, Plaintiff participated in the Comprehensive Alcohol and Substance Abuse Treatment ("CASAT") program at the Arthur Kill Facility.   *Id.* at ¶ 24.   Plaintiff was removed from that program in April 2001 for heroin use and was placed in a special housing unit ("SHU") for sixty days.   *Id.* at ¶ 25.   In February 2002, Plaintiff completed the ASAT program at the Franklin Correctional Facility.   *Id.* at ¶ 26, Ex. 4.   In September 2002, Plaintiff was found guilty of promoting prison contraband for possessing heroin at the Mid-State Correctional Facility and was

*-2-*

given six months confinement in SHU.  *Id.* at ¶ 27.  In September 2003, Plaintiff participated in the

Residential Substance Abuse Treatment ("RSAT") program at the Elmira Correctional Facility.  *Id.*

at ¶ 28, Exs. 4 & 5.  Plaintiff was then removed from that program in January 2004 for heroin use

and placed in SHU for one year.  *Id.* at ¶ 29.  Plaintiff appealed his one year sentence claiming the

sentence was excessive; on April 9, 2004, Defendant Goord affirmed the sentence.  *Id.* at ¶¶ 38 &

39.

On May 9, 2004, Plaintiff requested a suitable drug treatment program and was interviewed

by Dr. Thesee of the OMH.  *Id.* at ¶ 45.  The request was denied.  *Id.*  On May 10, 2004, Plaintiff

wrote to Correctional Counselor Moulton seeking suitable treatment for his drug addiction.  *Id.* at ¶

44, Ex. 1, at B-1.  On May 12, 2004, Plaintiff filed a grievance for "being punished because . . . of

his disease."  *Id.* at ¶ 47, Ex. 1, at A-1.  Toney also requested sick-call services but was not treated.

*Id.* at ¶ 48, Ex. 13.  On May 13, 2004, Plaintiff received a response from Moulton which was

"ambiguous and evasive" so Plaintiff wrote another letter to Moulton.  *Id.* at ¶¶ 49 & 50, Ex. 1, at B-

2.  That same day Plaintiff wrote to Defendant Mulvihill requesting treatment for his addiction to

which he received a response on May 14, 2004.  *Id.* at ¶¶ 51 & 52, Ex. 1, at B-3.  Therein, Plaintiff

was told to send his request to parole because DOCS does not have a residential drug treatment

program for prisoners in S-Block.  *Id.*  Since Plaintiff received no response to his second letter to

Moulton, he sent another letter on May 18, 2004, to which he again received no response.  *Id.* at ¶

55, Ex. 1, at B-4.  On May 18, 2004, Plaintiff wrote to the senior parole officer requesting treatment

for his addiction, to which he received no response.  *Id.* at ¶ 57, Ex. 1, at B-5.

On May 19, 2004, Plaintiff filed two grievances and then filed a third on May 25, 2004,

alleging Moulton's "failure to function properly as a Correctional Counselor."  *Id.* at ¶ 58, Exs. A-2,

A-3, & A-4.  The three grievances were combined and filed as MCY-11198-04.  *Id.* at ¶ 58.

Additionally, on May 19, 2004, Plaintiff sent a letter to Defendant McDonald requesting suitable

treatment for his drug addiction.  *Id.* at ¶ 59, Ex. 1, at B-6.  Plaintiff received a response from

McDonald on May 21, 2004, which stated in part that Plaintiff should improve his disciplinary

behavior in order to be transferred to a facility where he could participate in ASAT.  *Id.* at ¶ 61, Ex.

1, at B-6.  On May 23, 2004, Plaintiff again requested a sick-call but was not treated.  *Id.* at ¶ 64,

Ex. 13.  Then on May 24, 2004, Plaintiff wrote another letter to McDonald but received no

response.  *Id.* at ¶ 65, Ex. 1, at B-7.  The same day, Plaintiff sent a letter to Superintendent Lape

requesting suitable treatment.  *Id.* at ¶ 66, Ex. 1, at B-8.  Plaintiff received no response.  *Id.*

On May 26, 2004, Moulton went to Plaintiff's cell to "advise him that the administration

[did] not want any more letters about treatment[.]"  *Id.* at ¶ 67.  Then on May 27, 2004, Plaintiff

received a response to his grievance complaint, MCY-11199-04, in which Plaintiff complained of

discrimination based on his addiction.  *Id.* at ¶ 69, Ex. 1, at A-1.  His grievance was denied; Plaintiff

appealed the Inmate Grievance Resolution Committee's ("IGRC") decision the same day.  *Id.* at ¶

70.  On June 1, 2004, Plaintiff sent a letter to Defendant Nuttall requesting suitable treatment for his

drug addiction.  *Id.* at ¶ 71.  Plaintiff was also seen on the same day by Dr. Haider-Shah to whom he

requested treatment other than ASAT and yet was told that inmates in SHU could not be treated.  *Id.*

at ¶¶ 72 & 73.

Plaintiff filed a grievance on June 3, 2004, for denial of medical treatment.  *Id.* at ¶ 74, Ex.

1, at A-5.  On June 4, 2004, Plaintiff received a negative response to grievances MCY-11198-04 and

MCY 11199-04 from the Superintendent and appealed both to the Central Office Review

Committee ("CORC").  *Id.* at ¶¶ 75 & 76, Exs. A-1 & A-4.  Plaintiff then wrote a letter to Goord on

June 9, 2004, seeking suitable treatment for his drug addiction. *Id.* at ¶ 77, Ex. 1, at B-9. Plaintiff received another unfavorable IGRC decision on grievance MCY-11217-04, which he appealed to the Superintendent. *Id.* at ¶ 78, Ex. 1, at A-5. To that appeal, Plaintiff received an unfavorable response on June 15, 2004, to which Plaintiff appealed to the CORC. *Id.* at ¶ 79, Ex A-5. On June 24, 2004, Plaintiff received a letter from Nuttall denying him participation in a residential or community treatment facility because of his drug use in prison. *Id.* at ¶ 80, Ex. 1, at B-9. Plaintiff's grievances, MCY-11198-04 and MCY-11199-04, were denied by the CORC on July 7, 2004. *Id.* at ¶ 84, Ex. 1, at A-1 & A-4. Toney's other grievance, MCY-11217-04, was denied by the CORC on July 14, 2004. *Id.* at ¶ 85, Ex. 1, at A-5.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Upon a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a court may dismiss a complaint "only if 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Equal Employment Opportunity Comm'n v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) & citing *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 171 (2d Cir. 1998)); *see also Green v. New York State Dep't of Corr. Serv. et al*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted). However, the court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations.

*Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Nevertheless, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference."  *Green*, 2003 WL 22169779, at *1 (internal quotation marks and citations omitted) (alterations in original).

Moreover, pleadings submitted by *pro se* litigants "should be 'construed liberally,'" and a complaint "should not be dismissed unless 'it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations.'"  *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (internal citations omitted).  A "dismissal on the pleadings is *never* warranted unless the plaintiff's allegations are doomed to fail under any available legal theory."  *Id.* at 128.

### B.  ADA Claim

Plaintiff states that the Defendants violated the ADA because they discriminated against him based on his disability and they did not accommodate him in his request for suitable treatment for his drug addiction.  Compl. at ¶¶ 1 & 53.

The Supreme Court has stated that Title II of the ADA applies to state prisons and inmates. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (cited in *Singleton v. Perilli*, 2004 WL 74238, at *4 (S.D.N.Y. Jan. 16, 2004)).  Although suit may be brought against a prison, the Second Circuit has held "Title II of the ADA . . . [does not] provide[] for individual capacity suits against state officials."  *Garcia v. State Univ. of New York Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).

42 U.S.C. § 12202 states that "[a] State shall not be immune under the eleventh amendment

to the Constitution of the United States from an action in [a] Federal or State court of competent

jurisdiction for a violation of this [Act]."  The Supreme Court has affirmed that this statute is "an

unequivocal expression of Congress's intent to abrogate state sovereign immunity."  *United States*

*v. Georgia et al.*, 546 U.S. ___, 126 S. Ct. 877, 879 (2006).  Moreover, the Supreme Court has held

that Title II of the ADA creates a private cause of action for damages for conduct that *actually*

violates the Fourteenth Amendment as Title II validly abrogates the sovereign immunity of the

states.  *United States v. Georgia et al.*, 126 S. Ct. at 882; *see also Tennessee v. Lane*, 541 U.S. 509,

518, & 520 (2004) (holding that "Congress can abrogate a State's sovereign immunity when it does

so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the

substantive guarantees of that Amendment" if "congruence and proportionality [exists] between the

injury to be prevented or remedied and the means adopted to that end." (citing *Fitzpatrick v. Bitzer*,

427 U.S. 445, 456 (1976) & quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997))).[1]

The Second Circuit has stated that "a private suit for money damages under Title II of the

ADA may only be maintained against a state if the plaintiff can establish that the Title II violation

was motivated by discriminatory animus or ill will due to the disability[.]"  *Garcia*, 280 F.3d at 111-

12.  If a plaintiff were to sue individuals in their official capacities for money damages, the Second

Circuit has held that it would in fact be a suit against New York and therefore the Eleventh

Amendment would shield the individuals to the same extent as it would shield New York.  *Garcia*,

280 F.3d at 107 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) & *Kentucky*

*v. Graham*, 473 U.S. 159, 165-66 (1985)).  However, as the Supreme Court has abrogated sovereign

---

[1] In *Georgia*, the Supreme Court declined to address the question of whether Title II validly abrogates sovereign immunity for conduct that does not violate the Constitution.

immunity against the states under Title II for constitutional violations, a plaintiff may bring a lawsuit against individuals in their official capacities.  In addition to a lawsuit for money damages, a plaintiff may pursue prospective injunctive relief against a person in his or her official capacity.  *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Cruz v. Gomez*, 202 F.3d at 595 n.2.

In order to state a claim under 42 U.S.C. § 12132, Title II of the ADA, prisoners must show:

> (1) they are "qualified individuals" with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities.

*Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citation omitted).

A disability under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment."  42 U.S.C. § 12102(2) (quoted in *Bragdon v. Abbott*, 524 U.S. 624, 630 (1998)).  The consideration of subsection A requires a three step process set forth by the Supreme Court.  First, it must be determined if a plaintiff's conditions constitute a physical impairment.  *Bragdon*, 524 U.S. at 631.  The Supreme Court, looking to the Department of Health, Education and Welfare regulations to interpret the Rehabilitation Act, defines a physical or mental impairment as:

> (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following bodily systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

45 C.F.R. §  84.3(j)(2)(I) (1997) (quoted in *Bragdon v. Abbott*, 524 U.S. at 632).

Second, upon determining whether a physical or mental impairment exists, an identification must be made as to the "life activity upon which [plaintiff] relies . . . and determine whether it constitutes a

major life activity under the ADA." *Id.* at 631. Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii) (1997) & 28 C.F.R. § 41.31(b)(2) (1997) (quoted in *Bragdon v. Abbott*, 524 U.S. at 638-39) (noting that the list is not exhaustive and that reproduction, the claimed activity, was a major life activity). The final step is to ascertain whether "the impairment substantially limited the major life activity." *Id.* at 631. The Supreme Court has stated that "[t]o be substantially limited . . ., an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).

Pursuant to Title II, Plaintiff must allege a physical or mental impairment. The disability claimed by Plaintiff is that he is a "drug addict." Compl. at ¶ 14. The Second Circuit has held that past drug addiction will constitute an "impairment" under the definition of a disability according to the ADA. *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 46 (2d Cir. 2002) (citing *Buckley v. Consol. Edison Co.*, 155 F.3d 150, 154 (2d Cir. 1998) for the proposition that a ***recovering*** drug addict may be considered to have a "disability" under the ADA) (emphasis added). The Second Circuit has also noted that legislative history confirms that conclusion. *Id.* (citing H.R. Rep. No. 101-485(II), at 51 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 333, which states that "physical or mental impairment" includes "drug addiction"). In essence, while *Reg'l Econ. Cmty. Action Program v. City of Middletown* holds that a ***recovering*** drug addict falls within the statutory definition of a "qualified individual with a disability" under Title II, the Second Circuit in that case incorporated by reference another Second Circuit case which relies upon the statutory definition

found within Title I, 42 U.S.C. § 12114, for the basis of its holding that a recovering addict would qualify under the ADA.  Therefore, to qualify this notion, the term "qualified individual with a disability" will not include persons who are "currently engaging in the illegal use of drugs[.]"  42 U.S.C. § 12114(a).  In order to be considered a "qualified individual with a disability," the person must have (1) "*successfully completed* a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use; (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or (3) is erroneously regarded as engaging in such use, but is not engaging in such use[.]"  *Id.* at § 12114(b) (emphasis added).[2]

Moreover, a prisoner's "mere status as a[] . . . substance abuser does not necessarily imply a 'limitation'" as needed to fulfill the second part of the definition of a disability.  *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d at 47 (citation omitted).  Therefore, in order "[t]o prevail, a recovering drug addict . . . 'must demonstrate [not only] that he [or she] was actually addicted to drugs . . . in the past, [but also] that this addiction substantially limits one or more of his [or her] major life activities.'"  *Id.* (quoting *Buckley v. Consol. Edison Co.*, 127 F.3d 270, 274 (2d Cir. 1997)) (alterations in original).

In addition, under Title II, the phrase "'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . ., meets the essential eligibility requirements for the receipt of services or the

---

[2] The same basic provisions of 42 U.S.C. § 12114 under Title I for illegal drug use are also found within 42 U.S.C. § 12210 under the miscellaneous provisions subchapter of the ADA.  42 U.S.C. § 12210, which discusses illegal drug use, has been briefly touched upon within the prison context.  *See generally Kaufman v. Carter*, 952 F. Supp. 520, 529 (W.D. Mich. 1996).

participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  Under the statutory definition, a plaintiff would have to prove they are eligible for the participation in the program sought.  Notably, there is no constitutional right to treatment for drug addiction nor is there a right for an inmate to choose a drug treatment program he or she desires.[3]  *See Smith v. Follette*, 445 F.2d 955, 961 (2d Cir. 1971); *Doe v. Goord*, 2005 WL 3116413, at *16 (S.D.N.Y. Nov. 22, 2005).

Here, Plaintiff must state a cause of action under Title II of the ADA.  First, it must be determined if Toney is a "qualified individual."  Plaintiff has failed to plead that he is a qualified individual.  Pursuant to 42 U.S.C. §§ 12114 and 12210, Plaintiff has not ***successfully completed*** a supervised drug program nor has he otherwise been successfully rehabilitated.  Plaintiff's ongoing drug use further inhibits qualification under the statute.  Plaintiff has, in different facilities and at differing times, participated in several drug rehabilitation programs.  Compl. at ¶¶ 23, 24, 26, & 28; *see supra* Part I.  However, Toney was removed from many of those programs prior to completion because of drug use and received sixty days, six months,[4] and one year confinement respectively for the three incidents.  Compl. at ¶¶ 25, 27, & 29; *see supra* Part I.  Plaintiff's only claim that he is drug free is because he was placed in SHU for one year as punishment for using heroin.  Plaintiff's insistence on admittance to a drug rehabilitation program belies the notion that he "has been

---

[3] The courts have analyzed that an inmate does not have the right to a drug treatment program of his or her choice under the Eighth Amendment.  *See Doe v. Goord*, 2005 WL 3116413, at *16 (S.D.N.Y. Nov. 22, 2005) (citing *Fiallo v. DeBatista*, 666 F.2d 729, 730-31 (1st Cir. 1981) & *United States v. Billiot*, 2003 WL 22271225, at *6 (A.F. Ct. Crim. App. Sept. 26, 2003)); *see also infra* Part II.C. (discussing the Plaintiff has no liberty interest in receiving drug treatment) and Part II.E. (noting that denial of a suitable drug treatment program is not a violation of the Eighth Amendment).

[4] Plaintiff's segregation in SHU for six months was for possession of heroin at the Mid-State Correctional Facility.

rehabilitated successfully, by his confinement in the SHU and is no longer engaging in the use of illegal drugs[.]" Compl. at ¶ 15. Even Plaintiff's claim that he has been "erroneously regarded as engaging in such use, but is not," must fail as he was caught and punished in three different facilities for drug use. In addition, Plaintiff has not plead that he is a ***recovering*** drug addict, only that he is a drug addict. *Id.* at ¶ 14. Thus, Plaintiff is not a "qualified individual with a disability" within the purviews of 42 U.S.C. §§ 12114 and 12210.

Even if Plaintiff's drug addiction were to qualify as an "impairment" for a recovering addict, Plaintiff must fulfill the remaining requirements under the ADA. Plaintiff must still allege the major life activity upon which he relies. Toney claims his major life activities that have been affected are his inability to maintain employment, interference with his education, and neglect towards his health and safety. Compl. at ¶ 22. Neglect towards his health and safety is not a major life activity. Inability to maintain employment and interference with his education may constitute major life activities. In any event, it must be determined whether the physical impairments substantially limit the major life activity asserted. Here, it would be difficult for Plaintiff to state that his drug addiction prevents or severely restricts him from doing activities that are of central importance to most people's daily lives and that the addiction's impact is permanent or long-term; therefore Plaintiff's drug addiction may not constitute a disability.

Notwithstanding, assuming ongoing drug addiction would constitute a disability, Plaintiff has failed to state a cause of action upon which relief could be granted. Plaintiff seeks accommodation based on his disability for a suitable drug treatment program. Plaintiff has identified the numerous programs he has participated in, including ASAT, CASAT, and RSAT. *See supra* Part I. Therefore, Plaintiff was not completely deprived of participation in any program.

Moreover, Plaintiff would not be a "qualified individual" pursuant to Title II, 42 U.S.C. § 12131(2), as he would not be an individual with a disability who meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity since there is no constitutional right to drug rehabilitation. Accordingly, as Plaintiff has no constitutional right to drug rehabilitation, among other things as stated above, there has been no *actual* violation of the Fourteenth Amendment and his claim must fail. *See United States v. Georgia*, 126 S. Ct. at 882.[5]

Therefore, it is recommended that the Motion to Dismiss be **granted** on the ADA claim.

### C. Due Process Claims

Plaintiff alleges Defendants Mulvihill, Moulton, McDonald, Lape, Goord, and Nuttall violated his due process rights by failing to provide him with treatment he desired for his drug addiction. Compl. at ¶¶ 54, 56, 63, 68, & 82. Plaintiff claims that he has a "protected liberty interest" in a suitable drug treatment program. *Id.* at ¶ 43. In addition, Plaintiff claims that Defendant Goord violated the Due Process Clause of the Fourteenth Amendment when he affirmed a finding of guilt, on April 9, 2004, based on Disciplinary Rule 113.24,[6] which Plaintiff asserts is unconstitutional. *Id.* at ¶ 38.

The Due Process Clause of the Fourteenth Amendment states that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. It is well-established that a prisoner who has been lawfully incarcerated will only have "a narrow

---

[5] Since Plaintiff is not a "qualified individual," we need not address the very question left open in *United States v. Georgia*, that is whether sovereign immunity was validly abrogated for non-constitutional violations.

[6] This disciplinary rule is found at N.Y. COMP. CODES R. & REGS., tit. 7, § 270.2(B)(14)(xiv).

range of protected liberty interests." *Morris v. Dann*, 1996 WL 732559, at *3 (N.D.N.Y. Dec. 11,

1996). The Supreme Court has stated that "the criminal defendant has been constitutionally

deprived of his liberty to the extent that the State may confine him and subject him to the rules of its

prison system so long as the conditions of confinement do not otherwise violate the Constitution."

*Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Benjamin v. Fraser*, 264 F.3d 175, 189 (2d

Cir. 2001). Therefore, in order to succeed on a § 1983 claim based on the Fourteenth Amendment,

the prisoner would have to prove "a deprivation of a liberty interest protected by the Due Process

Clause itself, or a violation of a state-created liberty interest." *Morris*, 1996 WL 732559, at *3.

For a prisoner to survive a motion to dismiss on a Due Process claim, the prisoner must

allege that: 1) "the State has granted inmates, by regulation or statute, a protected liberty interest

with respect to the terms or conditions of confinement; and 2) the defendants' action creates an

'atypical and significant hardship' with regard to those terms or conditions of confinement." *Shariff

v. Artuz*, 2000 WL 1219381, at *6 (S.D.N.Y. Aug. 28, 2000) (citing *Frazier v. Coughlin*, 81 F.3d

313, 317 (2d Cir. 1996) & quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

The Second Circuit has stated "[t]he claim to a constitutional right to treatment for narcotics

addiction has no basis in either the provisions of the Constitution or the decisions of the courts."

*Smith v. Follette*, 445 F.2d 955, 961 (2d Cir. 1971); *Doe v. Goord*, 2005 WL 3116413, at * 16

(S.D.N.Y. Nov. 22, 2005) (citing *Smith v. Follette* & *Gill v. United States Parole Comm'n*, 692 F.

Supp. 623, 628 (E.D. Va. 1988) for the proposition that "[i]nmates have no constitutional right to

any rehabilitation treatment or programs such as the drug program sought here.")).

Here, even accepting all of Toney's factual allegations as true per the motion to dismiss

standard, the Court is unable to find that he has been deprived of any constitutional right as there is

no constitutional right to be treated for drug addiction.  Furthermore, Plaintiff has not stated that

New York has created a liberty interest in receiving a drug program of Plaintiff's choosing nor does

he claim how the Defendants' actions created an atypical and significant hardship to his condition of

confinement.  Plaintiff cites to N.Y. CORRECT. LAW §§ 70(2)(c), 72-a(1), & 73(1); however, those

statutes give the Commissioner of the Department of Correctional Services the discretion to provide

an inmate with a transfer to a drug treatment facility.  Compl. at ¶¶ 18-20.  New York has not

created a protected liberty interest as the programs are discretionary.  In regards to Plaintiff's claim

against Defendant Goord for affirming a finding of guilt on the disciplinary rule, Plaintiff has again

failed to state a due process violation as he has not stated a constitutional or state-created interest to

"use or be under the influence of any narcotics or controlled substances unless prescribed by a

health service provider[.]"  N.Y. COMP. CODES R. & REGS., tit. 7, § 270.2(B)(14)(xiv).

Therefore, it is recommended that the Motion to Dismiss be **granted** on the due process

claims.

### D.  Equal Protection Claims

Plaintiff alleges that his confinement in SHU is a violation of the Equal Protection Clause

since the confinement was based "on a discriminatory rule, prison rule 113.24" because the rule is

applied to drug addicts.  Compl. at ¶ 30.  As in his due process claim, Plaintiff also alleges that

Defendant Goord violated the Equal Protection Clause when he affirmed a finding of guilt, on April

9, 2004, based on Disciplinary Rule 113.24.  *Id.* at ¶ 38.  Furthermore, Plaintiff avers that

Defendants Mulvihill, McDonald, Lape, Goord, and Nuttall violated his "right to equal protection of

[the] law" by discriminating against him for his "disease" by failing to allow him to attend a

"suitable program."  *Id.* at ¶¶ 54, 63, 68, & 82.  In addition, Plaintiff purports that Dr. Haider-Shah

violated the Equal Protection Clause of the Fourteenth Amendment by "failing to treat him while in the SHU." *Id.* at ¶ 73.

The Equal Protection Clause of the Fourteenth Amendment states no "State [shall] deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. It further "directs that all persons similarly circumstanced shall be treated alike." *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citation omitted).

The Second Circuit has held that in order for a prisoner to state a violation of the Equal Protection Clause, the prisoner "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (citation omitted).  An Equal Protection claim may be brought "by a 'class of one' where a plaintiff alleges that []he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362-63 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  However, the plaintiff need not specifically identify "actual instances where others have been treated differently" in order for the equal protection claim to be sufficient. *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003).

The Second Circuit has also stated that "where the state has made a legitimate effort to allocate its resources in a reasonable manner, without any evidence of an intent to discriminate on the basis of invidious grounds, the courts will not intervene." *Smith v. Follette*, 445 F.2d at 959-60.  Moreover, "[t]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. (Citation omitted).  It is enough that the State's action be rationally based and free from invidious discrimination." *Id.* at

960 (quoting *Dandridge v. Williams*, 397 U.S. 471, 486-87 (1970)).  Thus, because the social,

economic, and philosophical nature of public welfare programs are not "the business of [the

Supreme Court]," neither are "determination[s] of the nature of treatment of addicted criminals."

*Id.* (quoting *Dandridge v. Williams*, 397 U.S. at 487).

In addition, "incarcerated prisoners are protected from cruel and unusual punishment in the

form of inadequate medical care by the Eighth Amendment, as applied to the state by the Fourteenth

Amendment." *McKenna v. Wright*, 2002 WL 338375, at *9 (S.D.N.Y. Mar. 4, 2002) (citing *Estelle*

*v. Gamble*, 429 U.S. 97, 101-05 (1976)).  A cause of action for deliberate indifference of medical

care brought by a *pro se* prisoner under the Fourteenth and Eighth Amendments will only be

construed as a claim pursuant to the Eighth Amendment. *McKenna v. Wright*, 2002 WL 338375, at

*9.

Here, Plaintiff has not stated a claim that his SHU confinement violated the Equal Protection

Clause.  Plaintiff merely states that the violation occurs because it is applied to drug addicts and

could be applied to non-addicts.  Compl. at ¶¶ 31 & 33.  He does not claim that he was treated

differently than other drug addicts who were caught either in the use or possession of drugs while

incarcerated and that those addicts were not placed in SHU.  The same reasoning applies to

Defendant Goord in affirming a finding of guilt based on the violation of the disciplinary rule as he

does not state that he was treated differently than other drug addicts in the same position.  In regards

to his claim against Defendants Mulvihill, McDonald, Lape, Goord, and Nuttall to attend a "suitable

program," Plaintiff has not stated a claim that there was invidious discrimination and the Second

Circuit has held that it is not the Court's place to interfere in the determination of the nature of

treatment for addicts.  Additionally, once again, Plaintiff has failed to state that he was treated

differently than other drug addicts seeking their own desired treatment.

As to Plaintiff's claim against Defendant Haider-Shah for failure to treat him, claims for inadequate medical care are analyzed under the Eighth Amendment. Since Toney brings this claim under both the Fourteenth Amendment and Eighth Amendment, the Court will construe Plaintiff's claim as one pursuant to only the Eighth Amendment. *See McKenna v. Wright*, 2002 WL 338375, at *9.

Accordingly, it is recommended that the Motion to Dismiss be **granted** on the equal protection claims.

### E. Eighth Amendment Claims

Plaintiff states that his confinement in SHU for one year violates the Eighth Amendment as the punishment was "grossly disproportionate to the offense charged." Compl. at ¶ 36. Plaintiff also claims that Defendant Goord violated the Eighth Amendment when he affirmed the disciplinary sanction which Plaintiff claims was disproportionate to the offense. *Id.* at ¶ 39. Toney further alleges that Defendant Thesee violated the Eighth Amendment by denying his request "for suitable drug treatment." *Id.* at ¶ 46. In addition, Plaintiff claims that Defendants Haider-Shah, Goord, and Nuttall delayed medical treatment and that Dr. Haider-Shah also failed to treat him. *Id.* at ¶¶ 73 & 83.

The Eighth Amendment to the U.S. Constitution, which prohibits cruel and unusual punishment, "does not mandate comfortable prisons" and is utilized to determine whether the confinement is grossly disproportionate to the severity of crimes warranting imprisonment. *Davidson v. Conway*, 318 F. Supp. 2d 60, 62 (W.D.N.Y. 2004) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)) (further citation omitted); *see also Benton v. Scully*, 1990 WL 16092, at *3

(S.D.N.Y. Feb. 13, 1990).  "Restraints on an inmate do not violate the amendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain.'" *Smith v. Coughlin,* 748 F.2d 783, 787 (2d Cir. 1984) (quoting *Rhodes v. Chapman*, 452 U.S. at 346).  In *Dixon v. Goord*, the court held that an inmate's punishment of ten months in SHU after being found guilty of assaulting a prison officer was "penologically justified and not grossly disproportionate[.]"  224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002) (citing *Sostre v. McGinnis*, 442 F.2d 178, 190-94, & n.28 for the proposition that the "length of disciplinary detention did not constitute disproportionate punishment considering the gravity of the offense" which further cited to *Knuckles v. Prasse*, 302 F. Supp. 1036 (E.D. Pa. 1969), noting that 400 days in segregation was held to be constitutional)); *see also Horne v. Coughlin*, 155 F.3d 26, 31 (2d Cir. 1998) (stating that the court did view a six month detention in SHU to violate the standard of gross disproportionality).

        "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotation marks and citations omitted) (alteration in original). This standard contains objective and subjective elements. *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance*, 143 F.3d at 702 & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S.

825, 835 (1994)).

This deliberate indifference must be in regards to the "prisoner's serious illness or injury[.]" *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Additionally, "'[b]ecause society does not expect that prisoners will have unqualified access to health care,' a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care." *Smith*, 316 F.3d at 184 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (further citation omitted). Some factors that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations omitted) (noting that an inmate is not required to show "that he or she experiences pain that is the limit of human ability to bear, nor [does the court] require a showing that his or her condition will degenerate into a life threatening one").

The prisoner has to show "more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184 (internal quotation marks and citation omitted). Prison officials act with deliberate indifference "when [they] 'know[] of and disregard[] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837). The Eighth Amendment deals with "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the

prisoner's underlying medical condition, considered in the abstract[.]"  *Smith*, 316 F.3d at 186 (citations omitted).  Moreover, the "severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances."  *Id.* at 187 (citation omitted).

Furthermore, a delay in medical treatment does not necessarily invoke the Eighth Amendment.  The "delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Thomas v. Nassau County Corr. Ctr.*,  288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance,* 143 F.3d at 703).  Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, such a classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast degenerating condition for three days; or delayed major surgery for over two years."  *Freeman v. Stack*, 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000) (internal quotation marks omitted).

Here, Plaintiff claims that his SHU confinement of one year was grossly disproportionate to his crime.  Plaintiff merely asserts a conclusory statement unsupported by any facts and furthermore only states a legal conclusion disguising it as a factual allegation.  Compl. at ¶ 36.  Plaintiff makes the same general statement in regards to Defendant Goord that he affirmed the disciplinary sanction which was "grossly disproportionate."  *Id.* at ¶ 39.  Toney provides no facts regarding the disciplinary sanction nor any documentation from the event.  In any event, courts have found similar periods of confinement not to violate the Eighth Amendment and Plaintiff had been placed in SHU for sixty days and six months respectively twice before for drug use prior to his one year confinement for the same offense.  *See supra* Part I.

As to Plaintiff's claim against Dr. Thesee, Plaintiff has failed to state a claim for which relief

can be granted.  Plaintiff states his Eighth Amendment rights were violated when his request for

"suitable treatment" was denied.  Here, Toney does not allege that he was deprived of essential

treatment or that Defendant Thesee was indifferent to his serious needs, but only that he has not

received the type of treatment which he sees fit.  Although Toney is ungratified with the drug

treatment programs he has received, the Eighth Amendment does not give him the right to the drug

treatment of his choice.  *See Doe v. Goord*, 2005 WL 3116413, at * 16 (S.D.N.Y. Nov. 22, 2005)

(citing *Fiallo v. DeBatista*, 666 F.2d 729, 730-31 (1st Cir. 1981) & *United States v. Billiot*, 2003 WL

22271225 at *6 (A.F. Ct. Crim. App. Sept. 26, 2003) for the proposition that "[t]here is no

constitutional right to drug rehabilitation.  Drug addiction therapy can fall in the category of

necessary medical treatment, but only when denial of such treatment is sufficiently harmful to

satisfy the deliberate indifference standard.  It is not enough that an accused merely wants a certain

type of treatment).  Thus, even construing Plaintiff's allegations as true, as there is no constitutional

right to choose a drug treatment program, Plaintiff cannot state a claim.  Furthermore, Plaintiff has

failed to allege any facts that would satisfy the deliberate indifference standard as Plaintiff's

statements are again general and conclusory.  *See generally* Compl.

Plaintiff's allegations against Defendants Haider-Shah, Goord, and Nuttall for delay in

treatment and the further claim against Dr. Haider-Shah for failure to treat him while in SHU also

fails to state a claim upon which relief may be granted.  As to a delay in treatment, besides having to

prove a serious illness, Plaintiff must show that the Defendants acted with the culpable state of

mind.  Even if drug addiction was to constitute a serious illness as it could significantly affect his

daily activities and he had received treatment in other substance abuse programs, Plaintiff has failed

to provide any facts to show that the Defendants knew of and disregarded an excessive risk to

Plaintiff's health.  Plaintiff's claim for delay in treatment arises from not receiving the treatment program of his choice.  *See* Compl. at ¶¶ 72, 77, & 80.  Plaintiff has misinterpreted the meaning of delay in treatment within the context of the Eighth Amendment.  Plaintiff has not alleged that the Defendants' act or failure to act that evinced "a conscious disregard of a substantial risk of serious harm."  *Thomas v. Nassau County Corr. Ctr.*, 288 F. Supp. 2d at 339.  Plaintiff also has not claimed that the Defendants were delaying treatment in order to punish him nor does he claim that the Defendants are ignoring a life threatening condition.  *See Freeman v. Stack*, 2000 WL 1459782, at *6.  Plaintiff's claim against Dr. Haider-Shah for failure to treat must also fail as Plaintiff has failed to allege any facts of a culpable state of mind on the part of Dr. Haider-Shah.  Plaintiff only purports that he was told that he could not be treated with a drug treatment program while in SHU.  Compl. at ¶ 72.  Besides failing to meet the second prong of the Eighth Amendment standard, Plaintiff has no constitutional right to drug rehabilitation.  There is no cognizable claim for failure to provide a drug treatment program.

Therefore, it is recommended that the Motion to Dismiss be **granted** as to Plaintiff's Eighth Amendment claims.

### III.  CONCLUSION

For the reasons stated therein, it is hereby

**RECOMMENDED**, that the Motion to Dismiss (Dkt. No. 22) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R.

CIV. P. 72, 6(a), & 6(e).

Date:   March 22, 2006
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge